# In the United States Court of Federal Claims

No. 14-352C

(Filed: May 17, 2016)

| | | |
|---|---|---|
| ************************************* | * | |
| EVIE'S CATERING, INC., | * | |
| | * | |
| Plaintiff, | * | Contract Interpretation; Pricing Information in Task Order; Meaning of "EST" Next to Price; Summary Judgment. |
| v. | * | |
| | * | |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| ************************************* | | |

*J. Jay Carroll*, Halverson Northwest Law Group, P.C., Yakima, Washington, for Plaintiff.

*Christopher L. Harlow*, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Steven J. Gillingham*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

WHEELER, Judge.

This contract claim arises under the Contract Disputes Act, 41 U.S.C. § 7101 et seq. The case involves a catering services contract to provide meals at a National Guard training facility in the state of Washington. At issue is whether the price of a specific task order under the contract is $483,061.00 or $317,463.40. The contractor, Evie's Catering, claims the difference, $165,597.60, plus interest from the date of the contracting officer's receipt of the certified claim. The issue to be decided is purely a legal question of contract interpretation, and may be resolved on cross-motions for summary judgment. The Court has jurisdiction under 41 U.S.C. § 7104(b). For the reasons explained below, the Court denies Plaintiff's motion for summary judgment, and grants the Government's cross-motion for summary judgment.

Factual Background

On April 7, 2008, Plaintiff Evie's Catering and the United States Property and Fiscal Office of Washington entered into an indefinite delivery-indefinite quantity ("IDIQ") contract. Under the contract, Evie's was to provide food and other catering services to personnel for the Washington Army National Guard and other Department of Defense agencies at the Yakima facility in the state of Washington. The contract provided for an initial one-year performance period with possible extensions not to exceed 66 months. By a series of extensions, Evie's continued to perform through March 31, 2013.

As an IDIQ contract, the Government awarded services to Evie's by individual task orders generated at the time the services were required. See Federal Acquisition Regulation 16.504(a). The IDIQ contract serves as a master contract setting forth the estimated number of meals and prices. The actual number of meals would be provided by individual task orders. Between 2008 and 2012, the United States Property and Fiscal Office issued to Evie's individual task orders for catering and meal services without incident.

In December 2011, the Second Chemical Battalion, an active-duty unit based in Texas, approached Evie's to provide meal and catering services for a training exercise at the Yakima Center in April and May 2012. Initially, Evie's negotiated directly with Second Chemical Battalion for these services because Second Chemical Battalion was not approved to submit a task order under the IDIQ contract. Evie's sent Second Chemical Battalion an initial proposal for $483,061.00. Eventually, Second Chemical Battalion was approved to submit a task order under the IDIQ contract. As a result, the United States Property and Fiscal Office took over as the contracting agent and Evie's ceased its direct negotiations with Second Chemical Battalion. Relying on Evie's initial proposal, Second Chemical Battalion authorized the United States Property and Fiscal Office to spend a maximum amount of $483,061.00 on its behalf. However, the United States Property and Fiscal Office was only to pay Evie's for services actually provided during the exercise.

On April 20, 2012, Second Chemical Battalion's finance officer provided daily meal requirements to the United States Property and Fiscal Office in three spreadsheets. Based on the spreadsheets, Second Chemical Battalion's finance officer noted $317,463.40 for the total cost. The Second Chemical Battalion's finance officer instructed the United States Property and Fiscal Office that the spreadsheets constituted the authorized requirements for this task order. Def.'s Mot. Summ. J., Jan. 15, 2016, Dkt. No. 14-1 at Defendant's Appendix ("DA") 051.

On April 23, 2012, the United States Property and Fiscal Office issued Task Order 112. In the block for "total award amount," the task order stated "$483,061.00 EST". Dkt. No. 14-1 at DA 056. Task Order 112 also included the three spreadsheets that contained lower costs yielding a total of $317,463.40. Dkt. No. 14-1 at DA 061-063. The interpretation of Task Order 112 is central to the parties' dispute. After receiving Task Order 112, Evie's began providing meal services to Second Chemical Battalion. On August 23, 2012, the United States Property and Fiscal Office paid Evie's $317,463.40 for meal and catering services provided under Task Order 112.

On March 7, 2013, Evie's submitted a Contracts Disputes Act claim to the United States Purchase and Finance Office regarding Task Order 112. Dkt. No. 14-1 at DA 064-076. Despite the "EST" notation and attached spreadsheets, Evie's asserted that $483,061.00 was not an estimate but rather a guaranteed payment amount. Thus, according to Evie's, the United States Property and Fiscal Office breached the agreement when it paid only $317,463.40. Evie's makes the same arguments in the case before this Court. On April 26, 2013, the United States Property and Fiscal Office contracting officer denied Evie's claim. Dkt. No. 14-1 at DA 077-079.

On April 28, 2014, Evie's filed suit in this Court requesting $165,597.60 in damages, the difference between the estimate on the front page of Task Order 112 and the amount paid.[1] On January 15, 2016, the parties filed cross-motions for summary judgment.[2] These motions are fully briefed. The Court heard oral argument on April 8, 2016. For the reasons set forth below, the Court grants the Government's motion for summary judgment.

## Analysis

A. Standard of Review

Summary judgment is appropriate when the evidence indicates that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c); Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986). A "genuine" dispute is one that "may reasonably be resolved in favor of either

---

[1] Under the Contracts Disputes Act statute of limitations, Evie's had one year after the contracting officer's final decision to file suit in this Court. In other words, Evie's had until April 26, 2016 to file. However, Evie's suit in this Court was timely. One year from the date of the contracting officer's decision was April 26, 2014, a Saturday. Thus, Evie's filing on Monday, April 28, 2014 was timely under this Court's rule permitting filing on the next business day after a weekend or holiday. RCFC 6(a); see Wood-Ivey Sys. Corp. v. United States, 4 F.3d 961, 964 (Fed. Cir. 1993).

[2] Judge Thomas C. Wheeler received this case by transfer from Judge Lawrence J. Block on January 15, 2016.

3

party," and a fact is "material" if it might significantly alter the outcome of the case under the governing law.  Anderson, 477 U.S. at 248, 250.  In determining the propriety of summary judgment, a court will not make credibility determinations, and will draw all inferences in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

Issues involving contract interpretation are often resolved through summary judgment because contract interpretation is generally a matter of law.  See, e.g., Northrop Grumman Computing Sys., Inc. v. United States, 93 Fed. Cl. 144, 148 (2010) (collecting cases).  This is particularly true when, as here, the contract is clear and unambiguous on its face.  Id.; CW Gov't Travel, Inc. v. United States, 63 Fed. Cl. 369, 390 (2004).

"A contract is read in accordance with its express terms and the plain meaning thereof."  See, e.g., C. Sanchez & Son, Inc. v. United States, 6 F.3d 1539, 1543 (Fed. Cir. 1993) (citations omitted).  The Court interprets the contract in a manner that gives meaning to all of its provisions and makes sense, avoiding conflict or surplusage of its provisions.  Saighi v. Gen. Servs. Admin., No. 2015-1859, 2016 WL 1426091, at *3 (Fed. Cir. April 12, 2016); see Gardiner, Kamya & Assocs., P.C. v. Jackson, 467 F.3d 1348, 1353 (Fed. Cir. 2006) (same).

## B. Task Order 112 is Unambiguous

The threshold question in this case is whether the plain meaning of Task Order 112's "$483,061.00 EST" total award notation supports only one reading or supports more than one reading and thus is ambiguous.  LAI Servs., Inc. v. United States, 573 F.3d 1306, 1314 (Fed. Cir. 2009) (citation omitted).  Contrary to Evie's contentions, Task Order 112's $483,061.00 total award notation is not ambiguous.  It is an estimate.  Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1304-05 (Fed. Cir. 1996) (explaining that estimates are unambiguous).  The Task Order plainly notes "EST" next to the price, making the price an estimate.  See Estimate, Merriam-Webster Dictionary (May 2, 2016), http://www.merriam-webster.com/dictionary/est (listing "est" as an abbreviation for estimate).  At different stages of this litigation, the parties have agreed that the "EST" annotation describes the $483,061.00 as an estimate.  Gov't Br. Summ. J. at 8, Dkt. No. 14; Dkt. No. 14-1 at DA 068.  Indeed, contract terms that are qualified as an "estimate" are equally unambiguous and non-binding.  Dalton, 98 F.3d at 1304-05.

To conclude that the $483,061.00 amount was a guaranteed payment would require the Court to ignore the "EST" annotation and three pages of detailed spreadsheets included in Task Order 112.  The Court declines to do so.  See, e.g., Gardiner, Kamya & Assocs., P.C. v. Jackson, 467 F.3d 1348, 1353 (Fed. Cir. 2006) (explaining that contract interpretation requires the Court to avoid leaving a provision of the contract meaningless).

The spreadsheets itemize the required meals and refine the price estimate in Task Order 112. There is no conflict between the estimated price and the itemized price in the spreadsheets. Task Order 112 unambiguously establishes that the United States Property and Fiscal Office was to pay Evie's $317,463.40 which it did on August 23, 2012.

Finally, the Court notes that equitable principles do not require award to Evie's. Evie's had notice of the $165,597.60 discrepancy before it began performance. Dkt. No. 14-1 at DA 051 (including spreadsheets in email to Evie's). Evie's does not assert and there is no evidence in the record to suggest that it provided more meals than for which it was paid.

## Conclusion

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment, and DENIES Plaintiff's motion for summary judgment. The Court directs the Clerk of Court to enter judgment for the Defendant. No costs.

IT IS SO ORDERED.

s/ Thomas C. Wheeler  
THOMAS C. WHEELER  
Judge